IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 21, 2005

## STATE OF TENNESSEE v. ANTHONY HOWARD SKELTON

**Direct Appeal from the Circuit Court for Wayne County**
**No. 13295     Robert Jones, Judge**

---

**No. M2005-01315-CCA-R3-CD - Filed February 8, 2006**

---

This is a direct appeal from the order of the trial court revoking the Defendant's probation and ordering him to serve his five-year sentence in the Department of Correction. The Defendant, Anthony Howard Skelton, raises two issues on appeal: 1) there was insufficient evidence to establish that he violated his probation, and 2) the trial court abused its discretion in ordering the Defendant to serve his entire sentence in the Department of Correction. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and J.C. MCLIN, JJ., joined.

R.H. Stovall, Jr., Public Defender, Columbia, Tennessee, for the appellant, Anthony Howard Skelton.

Paul G. Summers, Attorney General and Reporter; Rachel E. Willis, Assistant Attorney General; Mike Bottoms, District Attorney General; and Doug Dicus, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

In November of 2003, a Wayne County grand jury indicted the Defendant on fifteen counts of forgery for passing forged checks, in violation of Tennessee Code Annotated section 39-14-114. In December of 2003, the Defendant pled guilty to and was convicted of all fifteen counts of Class E felony forgery. The Defendant was sentenced as a Range I, standard offender to five years, but this sentence was suspended, and the Defendant was ordered to serve thirty days in the county jail and the remainder on supervised probation.

In August of 2004, the Defendant was arrested on charges of theft, burglary and failure to appear. These charges grew from the theft of a number of antique license plates from an out-building owned by Ms. Erma Merriman. A petition to revoke probation was filed in October of 2004. In November of 2004, the Defendant pled guilty to one count of misdemeanor theft under $500, see Tenn Code Ann. § 39-14-103, -105(1), and his burglary and failure to appear charges were dropped. On December 15, 2004, the trial court conducted a probation revocation hearing.

At this hearing, the Defendant's probation officer, Ms. Laurie Wade, testified that she filed the petition to revoke probation when she learned the Defendant received a "new felony charge." She also stated that in December of 2003, when the Defendant was first placed on probation, she reviewed all the conditions and rules with the Defendant, and he signed the probation order.[1] On cross-examination, Ms. Wade conceded that the Defendant was indigent, explaining that he lived in a mobile home on land his parents owned. She said that his parents helped out with his bills, and he had three children to support.[2] Ms. Wade also stated that the Defendant received a reduction in the court-ordered fees he was required to pay as part of his probation because of his "straiten circumstances."

Officer Gerald Baer with the Waynesboro Police Department testified that in March of 2004, Ms. Erma Merriman filed a burglary report, which stated that several antique licence plates were stolen from an out-building located on her property. Later, Officer Baer was again contacted by Ms. Merriman who informed him that she discovered the stolen plates at a local yard sale. Officer Baer instructed other officers to recover the stolen property,[3] and he interviewed Mr. Jason Moser, the operator of the yard sale. Based on Mr. Moser's statements concerning from whom he purchased the license plates, the Defendant was arrested on charges of theft and burglary. Officer Baer also stated that the Defendant resided approximately 100 yards from the property burglarized. On cross-examination Officer Baer admitted that the stolen property was recovered from Mr. Moser's yard sale and not from the Defendant.

Ms. Erma Merriman testified that she live in Waynesboro and the Defendant was her neighbor. She stated that several items were stolen from the out-building behind her house, including tools and several antique license plates that belonged to her son. She further stated that she discovered antique plates at a yard sale which she suspected were the ones stolen from her property. She called her son, who identified the plates, and then called the police. She also asserted

---

[1]The probation order signed by the Defendant lists fourteen "conditions of Probation," of which the first is: "I will obey the laws of the United States, or any State in which I may be, as well as any municipal ordinances." Just below the Defendant's signature is the following statement: "Violation of any of the terms of Probation may be sufficient cause for revocation of Probation."

[2]The record reveals that the Defendant at one time had three children, but one child died in 2003.

[3]The record reveals that the antique license plates were recovered, along with a receipt on which was listed James Merriman's name–Ms. Merriman's son, and Ms. Merriman's address–the location from which the items were stolen.

that she could prove the plates recovered at the yard sale were the ones stolen from her property because her son had kept the original sales receipts from when he purchased the plates. On cross-examination, Ms. Merriman admitted that several other houses and buildings in her area had recently been broken into by "boys," several of whom had been caught.

Mr. Jason Moser testified that he frequently conducts yard sales. He was conducting one in July of 2004 when police confiscated several antique licence plates he had on display. He stated that he purchased the plates from the Defendant, and he was showing them at the yard sale to get an estimate of their worth so he could then market them on e-bay. Mr. Moser further testified that he purchased license plates from the Defendant on three separate occasions and that the Defendant informed him that all the plates were acquired by legal means.

At the probation revocation hearing, the Defendant testified that he did not steal the plates. Rather, the Defendant asserted, he received the license plates, along with other items, from an acquaintance of his, Mr. Danny Garrison, approximately one month before he gave--not sold--the plates to Mr. Moser.[4] The Defendant further testified that he only pled guilty to the theft charge in order to have the burglary charge dropped and to "get it over with." However, the Defendant explained, no one informed him that his guilty plea would result in a revocation of his probation, and if he had known this he would not have pled guilty to the theft charge.

The Defendant also stated that he had undergone quadruple bypass surgery, had suffered one heart attack since this surgery, was on medication, and his medical condition rendered him unable to lift heavy objects. Additionally, the Defendant stated he was unemployed but helped care for his two children. He said that his youngest child was scheduled for kidney surgery shortly after his probation revocation hearing. On cross-examination, the Defendant admitted that he was represented by counsel and that he knew he was on probation when he pled guilty but insisted that he "didn't understand" the ramifications of his plea.

At the conclusion of the probation revocation hearing, the trial court found sufficient evidence to conclude that the Defendant violated the terms of his probation when he committed the theft of the license plates, a theft the Defendant "admitted in [his] guilty plea to the Court." The trial court also noted that the Defendant's "heart problems preceded all of [his] crimes" and came to the following conclusion:

> I guess this Court has got to give [the Defendant] a message today that he can't use his health and his children's health and his general misfortune as a pass to commit any kind of crimes he wants to after he is already in that situation and thinking he can get by with it and not have to pay some price for it.

---

[4]The Defendant stated that Mr. Garrison died of a heart attack approximately two to three months prior to his probation revocation hearing.

Speaking directly to the Defendant, the trial court ruled as follows: "You are a person of considerable misfortune, Mr. Skelton, but you are also a thief. And it is this court's responsibility to punish thieves. Probation is fully revoked." The Defendant was ordered to serve the balance of his five-year sentence in the Department of Correction. This appeal followed.

**ANALYSIS**

The Defendant argues that the trial court abused its discretion in ordering a full revocation of his probation. To support this claim, the Defendant asserts that: (1) there was insufficient evidence that he stole the licence plates at issue thereby violating the conditions of his probation, and (2) even if he was guilty of theft and violated the conditions of his probation, the mitigating circumstances of his particular case mandate a sentence less than full service of his five-year sentence in the Department of Correction.

A trial judge is vested with the discretionary authority to revoke probation if a preponderance of the evidence establishes that a defendant violated the conditions of his or her probation. See Tenn. Code Ann. §§ 40-35-310, -311(e); State v. Shaffer, 45 S.W.3d 553, 554 (Tenn. 2001). "The proof of a probation violation need not be established beyond a reasonable doubt, but it is sufficient if it allows the trial judge to make a conscientious and intelligent judgment." State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991).

When a probation revocation is challenged, the appellate courts have a limited scope of review. This Court will not overturn a trial court's revocation of a defendant's probation absent an abuse of discretion. See Shaffer, 45 S.W.3d at 554. For an appellate court to be warranted in finding that a trial judge abused his or her discretion by revoking probation, "there must be no substantial evidence to support the conclusion of the trial court that a violation of the conditions of probation has occurred." Id.

The evidence presented at the probation revocation hearing supports the trial court's finding that the Defendant violated the conditions of his probation. We find the testimony presented at the probation revocation hearing established, by a preponderance of the evidence, that the Defendant committed the crime of theft while on probation. We note that the Defendant himself admitted that Mr. Moser obtained the stolen plates from him. Moreover, the Defendant had already entered a plea of guilty to the theft charge prior to the probation revocation hearing. Accordingly, the trial court did not abuse its discretion in finding the Defendant had violated the terms of his probation by committing the crime of theft.

Furthermore, we conclude the trial court did not abuse its discretion in electing to revoke the Defendant's probation because of his violation. The Defendant first argues that he should not be subject to full revocation of probation because he was not informed when he accepted his plea agreement that his guilty plea would result in a revocation of his probation. However, the record reflects that the Defendant was instructed by an officer with the Board of Parole and Probation on the conditions of his parole in December of 2003. He signed this order thereby acknowledging that

he understood a "[v]iolation of any of the terms of Probation may be sufficient cause for revocation of Probation." Additionally, in October of 2004, the Defendant was put on notice that his probation was in jeopardy through the issuance of a Petition to Revoke Probation. Nonetheless, he elected, with the assistance of counsel, to enter a guilty plea a few weeks later in November of 2004.

Moreover, it is settled law that a defendant serving an alternative sentence is placed on notice through the sentencing acts themselves: "[a] defendant sentenced under the Act has no legitimate expectation of finality in the severity of the sentence, but is placed on notice by the Act itself that upon revocation of the sentence due to the conduct of the defendant, a greater sentence may be imposed." State v. Griffith, 787 S.W.2d 340, 342 (Tenn. 1990). Accordingly, the Defendant's argument that he failed to receive notice that his guilty plea would subject him to possible revocation of probation is without merit.

The Defendant also argues that the trial court should have imposed community corrections or a sentence less than full confinement due to his "serious health conditions" and family problems. However, the trial court noted that most of the Defendant's personal health problems existed before he committed his original forgery crimes and his subsequent crime of theft. Thus, the court did consider the mitigating factors of the Defendant's health issues but expressly chose to send the Defendant the "message . . . that he can't use his health and his children's health and his general misfortune as a pass to commit any kind of crime he wants . . . ." Additionally, we note that the Defendant was already the recipient of special treatment in the form of reduced court-ordered payments due to his "straiten circumstances," and yet he continued to commit crimes. Under these circumstances, we conclude the trial court did not abuse its discretion in finding the Defendant violated the terms of his probation or in revoking probation and ordering the Defendant to serve his sentence in confinement with the Department of Correction. Thus, the Defendant's challenge to the trial court's order revoking his probation is without merit.

**CONCLUSION**

Based on the foregoing reasoning and authorities, the judgment of the trial court is affirmed.

_____
DAVID H. WELLES, JUDGE